FILED
2021 Sep-07  PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MARY BETH THOMASON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:20-cv-00269-LCB** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION</u>

On February 28, 2020, Plaintiff, Mary Beth Thomason, filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's adverse action in accordance with 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an Answer on July 6, 2020. (Doc. 6). Thomason filed a Brief in Support of her position on September 4, 2020 (Doc. 10), and the Commissioner filed a Response on October 5, 2020. (Doc. 13). Thomason filed a Reply Brief on October 19, 2020. (Doc. 14). Over one year after taking her appeal, Thomason filed a Motion to Remand the case to the Social Security Administration in accordance with the sixth sentence of 42 U.S.C. § 405(g). (Doc. 19). The Commissioner filed a Response on August 9, 2021. (Doc. 20). The Court held an oral argument in this case on August 18, 2021. For the following reasons, the Commissioner's final decision is **AFFIRMED** and Thomason's Motion to Remand is **DENIED**.

## I.      Background

Thomason filed an application for social security disability benefits on January 10, 2018. (Tr. 247-250).[1] Her claim was denied on April 19, 2018. (Tr. 178-182). After her claim was denied, Thomason requested a hearing before an Administrative Law Judge. (Tr. 192-193). That hearing took place on December 18, 2018. Thomason was represented by counsel. (Tr. 122-155). Lauren Wright, a Vocational Expert, also testified at the hearing. (Tr. 147-154). The ALJ issued an adverse decision on February 28, 2019. (Tr. 10-29). Thomason requested review of the ALJ's decision by the Social Security Appeals Council. The Appeals Council affirmed the ALJ's denial of Thomason's claim on January 14, 2020. (Tr. 1-6). This lawsuit followed.

## II.     The ALJ's analysis

The ALJ issued a written opinion explaining his decision following the hearing. (Tr. 13-25). In his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. 20 C.F.R. § 416.920(a). In accordance with that standard, each step is followed sequentially and, if it's determined that the claimant is or isn't disabled at a particular evaluative, the ALJ won't proceed to the next step.

---

[1] "Tr" denotes the page number assigned in the administrative record filed by the Commissioner on July 6, 2020. *See* (Docs. 6-3 to 6-9).

The first step of the five-step analysis requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Thomason had not engaged in substantial gainful activity during the period from her alleged onset date of January 28, 2017, through her date last insured of September 30, 2018. (Tr. 16). Accordingly, the ALJ moved to step two.

At step two, ALJs must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities. . . ." *Id*. If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. The ALJ found that Thomason had the following severe impairments: "bilateral carpal tunnel syndrome, left shoulder degenerative joint disease, lumbar radiculopathy, osteoarthritis, depression, anxiety, and posttraumatic stress disorder ("PTSD"). (Tr. 16). The ALJ found, however, that Thomason's hyperlipidemia was not severe because it was controlled through treatment. *Id.* at 16. Additionally, the ALJ found that Thomason's substance abuse disorder in remission was not severe because the objective evidence did not establish a severe impairment. *Id.*

The third step of the analysis requires the ALJ to determine whether the claimant's impairments or a combination thereof meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. If not, the ALJ proceeds to the next step. The ALJ found that Thomason's impairments did not meet or equal any of the listed criteria and, therefore, proceeded to step four. (Tr. 16-19).

Step four of the evaluation requires an ALJ to determine the claimant's residual function capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work. 20 C.F.R. § 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. The ALJ found that Thomason did not have the RFC to perform her past work as a home attendant, fast food services manager, or cashier/checker. (Tr. 23).

At the final step, the ALJ must consider whether the claimant is able to do any other work considering her RFC, age, education, and work experience. If a claimant can do other work, she is not disabled; if not, she is. According to the ALJ, Thomason had the RFC to perform light work as defined at 20 C.F.R. § 404.1567(b), with certain physical and mental limitations. (Tr. 19-23). After hearing testimony

from VE Lauren Wright, the ALJ determined that there were jobs existing in significant numbers in the national economy that Thomason would be able to perform given her RFC, age, education, and work experience. Specifically, the ALJ opined that Thomason could perform the work of a small parts assembler, electronics worker, and inspector/hand packager. (Tr. 24). The ALJ also found that these jobs existed in sufficient numbers in the national economy to provide Thomason an employment opportunity. Therefore, the ALJ concluded Thomason was not disabled as defined by the Social Security Administration.

## III.   Standard of Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). "This limited review precludes deciding facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings.

*Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   Thomason's Arguments

Thomason presents three issues for review, claiming each constitutes reversible error. (Doc. 10 at 1-2). First, Thomason argues that the ALJ failed to adequately explain his decision that Thomason did not meet the necessary "B criteria" for impairment listings 12.04 and 12.06. Thomason then contends that the ALJ incorrectly determined that her symptoms were inconsistent with the objective medical evidence. Thomason's argument on this issue is two-fold: she argues that the ALJ incorrectly determined that Thomason's subjective statements were inconsistent with the objective medical evidence, and she contends that the ALJ improperly failed to consider Thomason's persistent attempts to obtain pain relief. Finally, Thomason asserts that the ALJ improperly found the medical opinion of Dr. Dallas Russell unpersuasive.

### A. Thomason is not entitled to relief on her claim that the ALJ didn't articulate a valid explanation for concluding that she didn't meet the B criteria for listings 12.04 and 12.06.

When evaluating a claim under impairment listings for mental impairments, the ALJ must use the special technique articulated in the regulations. *See* 20 C.F.R. § 404.1520a(b)(1). The B criteria under the special technique require that, in addition to the requirements in the listings themselves, the claimant must show that she has

"[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:" (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(B)(2).

The regulations provide that a moderate limitation means that the claimant's "functioning in the[e] area independently, appropriately, effectively, and on a sustained basis is fair." § 12.00(F)(2)(c). A marked limitation means that the claimant's "functioning in th[e] area independently, appropriately, effectively, and on a sustained basis is seriously limited." § 12.00(F)(2)(d). An extreme limitation means that the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." § 12.00(F)(2)(e).

Thomason argues that the ALJ erred in finding that she was moderately limited in the areas of: (1) concentrating, persisting, or maintaining pace; (2) adapting or managing oneself; and (3) understanding, remembering, and applying information. The Court will address each area in turn.

### 1. Concentrating, Persisting, or Maintaining Pace

The ALJ's conclusion that Thomason's limitation in concentrating, persisting, or maintaining pace was moderate is supported by substantial evidence. The regulations define the area of concentrating, persisting, or maintaining pace as "the

abilities to focus attention on work activities and stay on task at a sustained rate." § 12.00(E)(3). The regulations further offer examples of activities and abilities that "illustrate the nature of this area of mental functioning." *Id.*

Thomason argues that the explanation articulated by the ALJ is "totally disconnected" from the regulations. (Doc. 10 at 15). At oral argument, Thomason's counsel further explained that, while the regulations are written in terms of ability to work, the explanation offered by the ALJ was not specific to Thomason's ability to work. Rather the ALJ's explanation was related to Thomason's general condition. Importantly, Thomason does not argue that the evidence was insufficient to support the ALJ's conclusion. Rather, Thomason only argues that the conclusion was not sufficiently specific to "the ability to focus attention on work activities and stay on task at a sustained rate." *Id.* However, the law of this Circuit is clear that an ALJ's analysis does not need to semantically match the exact employment-centric terms of the regulations. Evidence of a claimant's ability to perform basic acts of self-care and house chores, to concentrate and focus on daily tasks, and watch television and listen to music has been found relevant when determining limitations in concentration, persisting, or maintaining pace. *Pinckney v. Comm'r of Soc. Sec.*, 853 Fed. Appx. 347, 351 (11th Cir. 2021); *see also Garcia v. Comm'r of Soc. Sec.*, 833 Fed. Appx. 303, 307 (11th Cir. 2020) (finding a moderate limitation supported by substantial evidence where claimant "exhibited at least some ability to concentrate

when examined" and could follow simple instructions); *Tisdale v. Soc. Sec. Admin.*, 806 Fed. Appx. 704, 709 (11th Cir. 2020).

Accordingly, the fact that the explanation is not in express terms of working a job is not relevant. Rather, the question is whether the record contains substantial evidence to support the ALJ's findings. In his determination, the ALJ cited the Function Report Thomason filled out. There, she stated that she had a good attention span and could follow instructions. (Tr. 18). The ALJ also pointed to the evaluations from Wellstone Behavioral Health, where examinations showed that Thomason's attention and concentration were good, and her memory was intact. *Id.* Further, the ALJ consulted records from Thomason's treatment by Dr. Jack Bentley. Dr. Bentley noted that Thomason could recite six digits forward and three backwards, as well as perform serial sevens and threes from 100. *Id.* The records cited by the ALJ support his finding that the limitations faced by Thomason in the area of concentrating, persisting, or maintaining pace were moderate. Because the ALJ's conclusion is supported by substantial evidence, Thomason is not entitled to remand on this issue.

### 2.  Adapting or Managing Oneself

The ALJ's finding that Thomason's limitation in the area of adapting or managing oneself was moderate is supported by substantial evidence. The regulations define adapting or managing oneself as "the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." §

12.00(E)(4). The regulations give a number of examples that illustrate the nature of the area of mental functioning. *Id.*

Again, Thomason argues that the explanation provided by the ALJ is inadequate because the explanation concerned her condition outside the workplace. (Tr. 16). Thomason again does not argue that there is insufficient evidence to support the finding the ALJ's findings. But, as noted *supra*, the law of this Circuit makes clear that an ALJ's explanation does not need to be semantically limited to the workplace. The Eleventh Circuit has considered as relevant evidence that a claimant was able to care for her children, drive, and shop for herself independently. *Tisdale*, 806 Fed. Appx. at 709. Similarly, general evidence of a claimant's ability to control behavior and maintain hygiene has been sufficient to find a moderate limitation in this area. *Pinckney*, 853 Fed. Appx. at 351.

Explaining his decision of a moderate limitation, the ALJ cited Thomason's Function Report, which stated that she was able to perform household chores and shop independently. (Tr. 18). Additionally, the Report showed that Thomason was able to handle her own finances. *Id.* Further, the ALJ pointed to records from Dr. Bentley where Thomason explained she was able to complete daily activities without assistance and could perform household tasks. *Id.* The records cited by the ALJ support his finding that Thomason's limitation in adapting or managing oneself was moderate. Thus, Thomason is not entitled to remand on this issue.

### 3.  Understand, Remember, and Apply Information

Finally, the ALJ's conclusion that Thomason was moderately limited in the area of understanding, remembering, and applying information is supported by substantial evidence. The B criterion of understanding, remembering, and applying information is defined in the regulations as "abilities to learn, recall and use information to perform work activities." § 12.00(E)(1). Again, the regulations provide illustrative examples of this mental area. *Id.*

Thomason again argues that the ALJ's explanation of his finding in this area is insufficient because it doesn't expressly make findings in terms of the workplace. And again, Thomason does not argue that the ALJ's finding wasn't supported by substantial evidence. However, this Circuit has consistently found that an ALJ's analysis does not need to be expressly and specifically intertwined with the workplace to support a finding under the B criteria. The Eleventh Circuit has found a claimant's ability to drive, pay bills, count change, handle a savings account, and use a checkbook as relevant evidence for a finding of a moderate limitation. *Tisdale*, 806 Fed. Appx. at 709. Additionally, the Circuit has found evidence of a claimant's intact memory, good judgment, ability to think abstractly, and ability to correctly complete simple math problems sufficient to support a moderate finding in this area. *Pinckney*, 853 Fed. Appx. at 350.

To explain his finding that Thomason was moderately limited in the area of understanding, remembering, and applying information, the ALJ cited Thomason's Function Report, wherein she said that, like the claimant in *Tisdale*, she was able to pay bills, count change, handle a savings account, and use a checkbook. (Tr. 17). Further, the ALJ points to records from Thomason's examination with Dr. Bentley where he observed that Thomason had a good memory, was alert and oriented, and could perform various mental tasks. *Id.* Thus, the record supports the ALJ's finding that Thomason is moderately limited in the area of understanding, remembering, and applying information, and Thomason is not entitled to remand on this basis.

### B. Thomason is not entitled to relief on her claim that the ALJ erred in determining that her subjective symptoms were inconsistent with the objective medical evidence.

Thomason argues that the ALJ incorrectly determined that Thomason's subjective statements of pain and limitation and her persistent attempts to obtain pain relief were inconsistent with the objective medical evidence of bilateral carpal tunnel syndrome and osteoarthritis of her hands. (Tr. 18-23). Essentially, Thomason argues that the ALJ erred in making a credibility determination against Thomason's subjective statements and actions. Ultimately, credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). So long as a credibility determination is clearly articulated and supported by substantial

evidence, it will not be disturbed. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

### 1. Subjective Statements of Pain

First, Thomason argues that the ALJ erred by discrediting her subjective complaints of pain and limitation with respect to her bilateral carpal tunnel syndrome and osteoarthritis of her left thumb. Thomason argues that this finding is prejudicial to her claim because, if not discredited, Thomason's subjective testimony would have resulted in a finding of disability. Generally, when a finding discrediting a claimant's subjective testimony of pain is supported by substantial evidence, the court will affirm the ruling. *Belle v. Barnhart*, 129 Fed. Appx. 822, 826 (11th Cir. 2005). Importantly, when the objective evidence shows that the underlying condition is controlled by conservative treatment, including through medication, it is not error for the ALJ to find that the objective evidence controls over the subjective testimony of the claimant. *Id.*; *see also Brown v. Comm'r of Soc. Sec.*, 680 Fed. Appx. 822, 826 (11th Cir. 2017).

First, it is important to note that the ALJ did not find that Thomason had no medical impairments. Rather, the ALJ reviewed Thomason's medical records and found that they supported a finding that Thomason suffered from several severe impairments. (Tr. 16). However, the ALJ, upon review of the entire record, found that the impairments weren't as severe as Thomason claimed in her subjective

statements. In support of those findings, the ALJ highlighted numerous records showing that the symptoms Thomason experienced were well controlled through conservative treatment. (Tr. 21-22). For her osteoarthritis of her left thumb, the ALJ cited records from the Good Samaritan Health Clinic where frequent examinations showed that Thomason's condition was controlled through treatment. (Tr. 21). Additionally, records from the Alabama Orthopedic Institute showed that conservative treatment with medication and injections improved her symptoms, and Thomason herself stated that her symptoms were relieved through treatment. (Tr. 21).

Further, the record contains sufficient evidence for a finding that there is not support for Thomason's claims of limitation due to osteoarthritis or carpal tunnel. The objective medical evidence related to Thomason's osteoarthritis showed that her chronic arthritis was controlled, and that examinations showed no musculoskeletal abnormalities. (Tr. 21). For her carpal tunnel syndrome, no objective evidence supported a finding of limitation. (Tr. 21-22). No diagnostic tests exist in the record, and frequent examinations showed no musculoskeletal or neurological abnormalities. *Id.* at 21. Importantly, the examination records showed that Thomason's grip strength and motor strength were normal. *Id.*

Accordingly, the record contains sufficient evidence on which the ALJ based his finding that Thomason's subjective complaints regarding the severity of her

symptoms were not credible. The records Thomason cites establish that she has medical conditions that would cause some amount of pain and discomfort. But those records alone don't prove that her pain is so severe that it rises to the level of a disability. Therefore, the Court finds that the ALJ's determination that Thomason's subjective statements were inconsistent with the objective medical evidence is supported by substantial record evidence.

### 2. Persistent Attempts to Obtain Pain Relief

Thomason next argues that the ALJ erred by failing to consider her persistent attempts throughout the relevant period to obtain pain relief through medication. To support her argument, Thomason cites Social Security Ruling 16-3p, which states that "[p]ersistent attempts to obtain relief of symptoms such as increasing dosages and changing medications, . . . may be an indication that an individual's symptoms are a source of distress and may show they are intense and persistent." 2017 WL 5180304 *9. Thomason also cites *Stricklin v. Astrue*, 493 F. Supp. 2d 1191, 1197 (N.D. Ala. 2007). In *Stricklin*, the court found that the ALJ erred in concluding that evidence that showed that medications helped to relieve symptoms proved that the claimant's symptoms were "reduced to the point where he could maintain full-time employment." *Id.*

However, the ALJ's analysis shows that he considered the treatment that Thomason received, including medication. (Tr. 21). Further, the ruling Thomason

relies upon doesn't strictly mandate that an ALJ articulate in his or her analysis consideration of attempts to obtain pain relief through medication when adjudicating claims. Rather, the ruling states that persistent attempts to obtain pain relief "*may be an indication that an individual's symptoms are a source of distress and *may show* they are intense and persistent.*" 2017 WL 5180304 *9 (emphasis added). That is, the ruling offers guidance in future cases, but does not require that an ALJ specifically articulate or include the specific evidence in question in his analysis.

Additionally, even if the ruling required the ALJ in this case to explicitly include its language in his analysis, failure to include that language to the letter would merely amount to harmless error. As stated above, the ALJ included Thomason's medication and its effects on her conditions in his analysis. But this Court has held that even a failure to mention a course of treatment in an ALJ's analysis is harmless error when evaluating the limitations of conditions on one's ability to work. *See, e.g., May v. Berryhill*, 2019 WL 2024321 *5 (N.D. Ala. 2019) (finding that failure to mention a course of treatment is harmless error because "multiple attempts to obtain relief are alone not determinable on whether symptoms are disabling").

Ultimately, the inference argued by Thomason—namely, that evidence of medication does not prove that a condition is below disability—is equally strong in the other direction. That is, evidence that a claimant has pursued medication is not,

16

alone, sufficient evidence that a condition rises to the level of disability. And in reviewing the ALJ's decision, the Court leaves credibility determinations and questions of weight to the ALJ. *Moore*, 405 F.3d at 1211. Because there is substantial evidence in the record to support the finding that Thomason's subjective testimony was inconsistent with the objective medical evidence, Thomason is not entitled to remand on this issue.

### C. Thomason is not entitled to relief on her claim that the ALJ erred by giving the medical opinion of Dr. Russell little weight.

Next, Thomason argues that the ALJ erred by finding that Dr. Russell's medical opinion concerning Thomason's limitations from her conditions was unpersuasive. (Tr. 23-25). Primarily, Thomason takes issue with the ALJ's finding that Dr. Marcus Whitman was persuasive, while Dr. Russell's opinion was unpersuasive. Thomason, citing case law from the 1980s and 1990s as well as regulations that are now outdated and no longer in effect, argues that Dr. Russell's opinion, as an examining physician, is entitled to greater weight than Dr. Whitman's opinion, as a non-examining physician. Additionally, Thomason argues that Dr. Russel's opinion should have been accorded greater weight as his specialty was in neurology. Next, Thomason argues that because the ALJ found the medical opinion of Dr. Russell vague, the ALJ had a duty to recontact Dr. Russell for further explanation. Thomason also argues, in her reply brief, that the ALJ's finding was not sufficiently supported by evidence because reports of non-examining physicians

17

alone cannot support an administrative finding for or against disability, citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985), and *Spencer v. Heckler*, 765 F.2d 1090, 1093-94 (11th Cir. 1985).

Thomason's first argument fails primarily because it is wholly reliant on outdated regulations and case law. Most importantly, Thomason concedes in her reply brief that the regulations found in 20 C.F.R. § 404.1520c control in her case. The current regulations followed by ALJs in reaching their decisions affirmatively disclaim any formal physician hierarchy. In conducting their analysis, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Accordingly, the ALJ, by the terms of the binding regulations, made no error in affording Dr. Whitman weight while finding Dr. Russell's opinion unpersuasive.

Instead, so long as the finding of the ALJ was supported by substantial evidence, it must be affirmed by this Court. Here, the ALJ specifically cited the records from the Good Samaritan Health Clinic in support of finding the opinion of Dr. Whitman persuasive. (Tr. 22). Good Samaritan's records showing that Thomason's chronic arthritis was controlled and her musculoskeletal examinations were normal support Dr. Whitman's opinion. Additionally, the record contains evidence that supports the ALJ's decision finding Dr. Russell's opinion

unpersuasive. The ALJ points to the objective evidence from Dr. Russell's own examination of Thomason that shows that Thomason had a normal gait and station, had a normal range of motion of her lumbar spine, and no difficulty getting on and off the table. *Id.* This evidence is sufficient to support the ALJ's finding that Dr. Russell's opinion is unpersuasive as to the limitations faced by Thomason. Therefore, the ALJ committed no reversible error in considering the medical opinions of Dr. Whitman and Dr. Russell.

Additionally, on the issue of specialty, the ALJs "may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(b)(2). Included in those factors is the specialty of the physician. 20 C.F.R. § 404.1520c(c)(4). Thus, by the terms of the binding regulations, the ALJ did not err in failing to afford Dr. Russell's opinion weight based on his specialty.

The ALJ was further not required to recontact Dr. Russell because it found that his medical opinion was vague and not supported by his own findings. When reviewing a consultative examination report, the ALJ occasionally has a duty to contact the medical source to obtain additional information or seek a revised report. 20 C.F.R. § 404.1519p(b). However, the ALJ's duty only extends to situations where the report is "inadequate or incomplete." *Id.* The only deficiency in the report

identified by Thomason is that the ALJ found that Dr. Russell's medical opinion was vague. But the regulations make clear that while ALJs "will ordinarily request a medical opinion as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report incomplete." 20 C.F.R. § 404.1519n(c)(6). That is, a medical opinion does not affect the adequacy or completeness of a consultative report. Accordingly, the ALJ was under no duty to recontact Dr. Russell, and Thomason is not entitled to relief on that basis.

Finally, the ALJ did not err in finding that Thomason's conditions did not rise to the level of disability by relying, in part, on the opinion of Dr. Whitman. Contrary to Thomason's contention, the ALJ did not rely solely on the medical opinion of a non-examining physician in concluding that Thomason's condition did not constitute a disability. Rather, the ALJ consulted the relevant medical records and evidence from the Alabama Orthopedic Institute, the Good Samaritan Health Clinic, and Dr. Russell in addition to Dr. Whitman's opinion.

The objective medical evidence supports the ALJ's decision to find Dr. Whitman's opinion persuasive. In particular, the evidence from Good Samaritan Health Clinic shows that Thomason's symptoms were relieved through treatment, that her arthritis was controlled, and that she had no musculoskeletal abnormalities. Dr. Russell further found that Thomason's grip strength and motor strength were

normal, her gait and station were normal, and her range of motion of her lumbar spine was normal. Simply, in considering Thomason's condition, the ALJ consulted a wide variety of objective medical evidence. Further, the objective medical evidence supports the opinion of Dr. Whitman. The ALJ did not consider Dr. Whitman's opinion in a vacuum, but rather considered it as supported by the objective medical evidence in the record. Therefore, there is substantial evidence to support the ALJ's finding that Dr. Whitman's opinion is supported and persuasive, and Thomason is not entitled to relief on this issue.

## V.   Motion to Remand for New Evidence

In addition to her appeal, Thomason filed a separate Motion to Remand this case to the ALJ for consideration of new evidence. (Doc. 19). The new evidence consists entirely of treatment records from October 25, 2019, to January 11, 2021. Thomason cites the sixth sentence of 42 U.S.C. § 405(g) in support of her Motion. A remand pursuant to the sixth sentence of § 405(g) "is not based on error, but is available if new, material evidence becomes available to a claimant, and the claimant could not have presented that evidence during the administrative proceeding." *Thornton v. Comm'r of Soc. Sec.*, 597 Fed. Appx. 604, 614 (11th Cir. 2015) (citing *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1267 (11th Cir. 2007); *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)).

The parties focus on the issue of materiality in their briefs. New evidence is material if "it is relevant and probative so there is a reasonable possibility that it would change the administrative results." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Most importantly, the records at issue don't begin until 13 months after the relevant period of evaluation. That is, the new medical records are not within the relevant period to determine disability. Unless the records directly relate back to the relevant period, they are immaterial. *See, e.g., Wilson v. Apfel*, 179 F.3d 1276, 1278-79 (11th Cir. 1999). If subsequent medical records expressly state that a condition relates back to the relevant period, they can be material evidence under sentence six. *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988). But when subsequent records merely show deterioration of a condition over time, they are not on their own material. *McCloud v. Barnhart*, 166 Fed. Appx. 410, 419-20 (11th Cir. 2006) ("To the extent that the evidence might have shown that the problem is escalating, the evidence does not necessarily relate to the time period on or before the date of the ALJ's decision."); *see also Thornton*, 597 Fed. Appx. at 615 ("At most, [physician]'s evaluation shows that [claimant]'s condition had deteriorated since the ALJ issued his decision, which does not warrant a remand.").

Thomason's argues that the new treatment records, from after the relevant period, are material because, if considered by an ALJ, they could change the administrative result. However, Thomason doesn't indicate why the records relate

back to the relevant period. The new records may be evidence that Thomason *currently* meets the requirements for disability under the SSA. But the new records do not show that Thomason was disabled during the relevant period. More is required to warrant a remand under sentence six. *See Wilson*, 179 F.3d at 1279 ("While [physician]'s opinion one year later may be relevant to whether a deterioration in [claimant]'s condition subsequently entitled her to benefits, it is simply not probative of any issue in this case."). Ultimately, the new records show that, in the years since the ALJ's decision, Thomason's conditions have deteriorated. They do not show, and she has not articulated how they prove, that she was disabled during the relevant period. Therefore, Thomason is not entitled to remand under sentence six because the new evidence is immaterial.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and her separate motion to remand (Doc. 19) is **DENIED**. A final order will be entered separately.

**DONE** and **ORDERED** September 7, 2021.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE